3, 10, 0, 6, 9, 6, people who stayed well and might, and I believe Edmund Frostville v. Edward L. Farnsmoor, appellant by Kerry Bryson. Good morning. Good morning, your honors. May it please the court, counsel, I'm Kerry Bryson. I represent Ed Moore in this appeal. As the court is aware, this is the appeal from the dismissal and denial of Mr. Moore's post-conviction petition. A single claim was denied after an evidentiary hearing. The rest were dismissed on a state motion. We've raised two issues in the appeal. The first, dealing with whether counsel on the post-conviction proceedings provided a reasonable level of assistance. And the second, addressing whether it was error to dismiss a particular claim on waiver grounds. I'd like to start by talking about that first issue about counsel's representation. I know we've all seen how these post-conviction proceedings get started. It's often a pro se filing, page after page on a legal pad, front and back. 47 different claims that all are essential to the client's constitutional rights and alleging various deprivations. It's not the easiest work to decipher. It's not the easiest thing to read. It's not the easiest thing to evaluate. But if the court determines that there is grounds to appoint counsel, counsel is appointed and that becomes counsel's duty. To go through that petition, to see if there are claims that have merit, and to prepare and present a comprehensive filing to the court. Not to simply gather up claims and staple them together and send them back to the court as a filing. To do his job reasonably, counsel has to look at the claims and determine whether they actually have merit. If they do, counsel has to ascertain what are the basis of the claims, shape those complaints into the appropriate legal form, gather the necessary support, and present a filing to the court. That falls under counsel's duty to amend the petition, which is one of the duties under Supreme Court Rule 651C, one of the key duties of counsel. You have to consult with the client, you have to find out what the client's claims are, what are the constitutional deprivations being alleged here, and then amend those claims. And amending the petition often requires then that the claims be made legally sufficient, that evidence in the form of affidavits or documents be added to support the claims so that the petition can move forward and the claims can be adequately evaluated. Isn't some of your argument in this case today based on speculation that counsel could have found something? I don't think it's speculation in this case, because the petition that was filed, there was a lot attached to it. Witnesses were identified, what they would have said was set forth, but counsel needed to go out and actually talk to those witnesses, get those affidavits. Do we know from this record whether, in fact, he did or did not talk to them? I actually think it's clear from the record that he did not. Counsel was appointed, the counsel who ended up seeing this through all the way to the dismissal denial stage was appointed in 2003. This petition was filed more than 10 years ago. The defendant continued to file pro se claims, and they were kind of supplemented on, stapled together, whatever. And then the state filed its response, its motion to dismiss, and filed motions to strike several of the exhibits, because they were hearsay. But how do you make the inference that it was not an investigation? Because once the court ruled on several of those motions to strike, then PC counsel comes in and says, I need a continuance. I need to go out and talk to these witnesses. This is five years since he was originally appointed. And the court said, no, we're not giving you a continuance. You've had this case and denied a continuance, and that's referenced in the brief, it's cited in the brief. I think that's a clear indication that counsel wasn't out talking to anybody in that time. And then still, it moves forward, the claims are individually, separately considered and dismissed without anything being used. How much does the law require a lawyer to do in the PC for these independent investigations? Sure, I mean, the law requires a reasonable level of assistance. How high is the reasonable level? I mean, it seems to me that you're asking for a higher standard than exists. I'm not asking for a higher standard. I mean, we know it's less than effective assistance of counsel, it's reasonable assistance. And reasonable assistance, where the witnesses are identified, where they're known to counsel, counsel has an obligation to go out and investigate those witnesses, talk to those witnesses, and get the necessary support. The Johnson case from the Illinois Supreme Court says as much, that it's unreasonable assistance to not do that. Where the witnesses are known. This is not asking counsel to go out and drum up claims, find people who we don't even know who they are. It's, look, go out and talk to, for instance, the fingerprint expert. She sent a letter saying, I looked at the prints, they're insufficient to be compared. Well, that letter is stricken, as hearsay. Counsel could, presumably, have called her and said, hey, I'm going to send you out an affidavit that says essentially what's in your letter. Can you sign this and get it notarized and send it back to me and I'll supplement it to the petition? Then it's not hearsay. Then it's sufficient to support the petition. And counsel didn't do that. And he didn't do that in any number of instances in this case. I think, though, a key problem in this case is, look, the court is presented with this petition that by the time it gets to the end has 28 claims. Some of them clearly have no merit. You say this petition. It was actually the third amended post-conviction petition. Right. And it's actually a second petition. It's a successive petition. And they're amending it as it goes and relabeling it. How many times did Attorney Flood amend the petition? Amend in terms of substance? No. Amend in terms of gathering up claims and adding them to the back of what he'd already filed. I don't know that I could tell you an exact number. And the reason he added those to the back of what he already filed is because his client continued to be dissatisfied with what he was doing. And at some point in time, knowing how difficult sometimes clients can be, maybe it's just easier to use the client's language. It's an interesting question, if I can follow up on that. Is there a psychological element here between attorney and client and their relationship and the refusal of the judge to let Flood out? Well, he was let out, at least on one occasion. The defendant was pro se in this for a little while. I mean, that's essentially part of the argument the state is making, blaming the defendant. Ed Moore is a vocal client. He's an active client. He's an involved client. He may even be a difficult client. Notoriously difficult, isn't he? I've represented him for 10 years. I understand what kind of client he is and what kind of clients we get doing public defender work. I understand that. I also understand, and I think this court understands, it does not absolve counsel of their duty to provide reasonable representation. It doesn't just mean, well, it's easier. So you don't have to do your job. You still have to do your job. And we get letters from our clients before we even get the record. Here's 27 issues. You have to raise all of these. They're essential. This court would certainly not want me to just slap the cover on that and send it over here as the brief. Do you think his first attorneys were ineffective? John Greenlees and Jed Stone? In terms of ineffective, I mean, they only need to be reasonable. And I guess they didn't evaluate whether they provided reasonable assistance or not. So the amended petitions that they filed, which were adopted by flood, those portions would be reasonable? I don't necessarily think so, because some of those claims are the claims that we've addressed as they should have been supported. Some claims should have been withdrawn. And we've set it out in more detail. Because, again, it's hard to talk about each of the 28 claims individually, what should have happened to them. But to the extent those claims needed something more, needed more support, needed to be amended to be legally sufficient, needed the proper legal standards or should have been consolidated so that this could be pared down to a manageable number of claims, they may have provided unreasonable assistance, too. The fact of the matter is, though, what was... You're only claiming that flood did. I mean, he's the one who took this through, adopted those things and didn't do anything more, adopted the Pro Se claims and didn't do anything more. And, again, I mean, in talking... He didn't just adopt the Pro Se claims because he adopted the claims organized by the other two. Which amount to the first nine claims that are presented in the petition. Right. So he adopts all of it and takes it forward. So to the extent... He's the one ultimately responsible for what's before the court. It's J.D. Flood who should have done the amending, who should have done the paring down or the supporting or whatever needed to be done and should have had what I like to call the captain of the ship conversation with the client. You have chosen to have counsel. I am the captain of the ship. I am the one who makes those evaluations. Because it's not in the client's best interest to just shuffle claims together and hand it to the court. The court had that conversation. The court did have that conversation. But the filings continued. Right. The filings continued and counsel didn't do what counsel should have done and said, look, yes, he wants all of this. I'm not moving forward with those claims. Certain claims can't be supported. Certain claims need to be amended. Counsel is not just a rubber stamp for what the defendant sends in. Counsel's job is to shape those things to the extent possible into a comprehensive, coherent, legally sufficient filing. And counsel didn't do that here. I mean, by the time this thing was all said and done, I don't know, the filing consumed several volumes. There are hundreds and hundreds of pages. That is not in the client's best interest. And it certainly is not helpful to the court or to the state's attorney in trying to evaluate what's going on here. Counsel should have done, at a minimum, consolidating duplicate claims, eliminating claims that have no merit. I mean, at least one of those claims, the client himself said it has no merit. They voluntarily withdrew it when it finally got to the dismissal stage. Withdraw it earlier. Get it out of the way. Certain claims have been raised and litigated already, and it's clear. They were litigated in the prior appeal. They were litigated on the prior PC. Take them out. And tell the client, look, it's got to come out. I can't argue with something that has no support. I've had those conversations. They're not fun. It would certainly be easier to just do whatever the client wants. But because something is easy, it does not mean something is right. And in this case, what counsel did wasn't right. Did he get a third stage hearing? On one claim, he got a third stage hearing. On a single claim. And what other claims do you think he should have had a third stage hearing on? Based on the record that's before the court, I think at least the claimant is discussed in Issue 2 at some length in the filings, dealing with the witnesses from New York, the jailhouse informants, which is their statements now that, you know what, Edmore really didn't actually confess to us. We knew there was some reward money. We were told while he was in this holding cell with us, hey, if he said anything to you, you might stand to make, I think there was $40,000 available in terms of reward money. Thank you. So now they're saying, well, Edmore actually didn't say anything. That claim, I think, on the petition we can see was legally sufficient, except for the fact it was dismissed on waiver grounds, which is problematic because they tried to raise this in the prior PC. The affidavits from these witnesses were gained late while that prior PC was on appeal. They agreed to come forward and give these affidavits at that point. The attorneys tried to raise it. The appeal was in the Supreme Court at that time, and the court said, no, it's waived. It's not in the petition. We won't consider it, leaving open the merits of the case. And we've cited Caballero, which is a similar situation, where then the issue is appropriate in the success of PC. And again, counsel didn't even amend the petition to indicate that there's an excuse to the waiver rule here. There's an exception because these were late-gained affidavits and that Caballero would allow it to be raised. And so it ends up being dismissed on waiver grounds. The real problem is because counsel did not provide a reasonable level of assistance, we don't know if some of these other claims could have been supported, if the affidavits could have been obtained. The witnesses were identified. What they would have said was identified. But they weren't considered substantively because that support wasn't actually in a proper form. Had counsel done his job, we'd have a more complete record, and we know. So for that reason, we'd ask that it be reversed and remanded for additional post-conviction proceedings, and ask to issue, too, that that claim, in particular, advance to an evidence hearing. Thank you. Thank you. Mr. Ustin. Good morning. Good morning. May it please the Court. Regarding Issue 1, the defendant argues that the post-conviction counsel, Mr. Flood, did not provide a reasonable level of assistance and asserts that he failed to amend the defendant's pro se claims and the claims that the defendant's original counsel raised in the successive petition. The record shows that Mr. Flood provided the reasonable level of assistance that's required under the Post-Conviction Hearing Act and under Rule 651C. Our Supreme Court in Davidson-Pendleton stated that Rule 651C only requires post-conviction counsel to examine as much of the record as is necessary to adequately present and support those constitutional claims raised by the petitioner. And Pendleton Court stated that while the post-conviction counsel may conduct a broader examination of the record and raise additional issues that he or she chooses, there is no obligation to do so. The people detailed the very lengthy history of this matter in our briefing, and we're not going to try it. We'll just do a portion of that history here. The defendant filed a pro se successive petition, including seven claims, and because he'd been sentenced to death initially, the capital litigation division was appointed to represent him. The capital litigation attorneys amended the petition to present nine claims, and the defendant filed another pro se petition with an additional four new claims, and the capital litigation attorneys filed another amended petition that included the same nine claims found in the first amended petition and added more factual information and exhibits. Counsel later filed a correction to this amended petition and added a tenth claim, which adopted the defendant's original seven pro se claims and his fourth pro se supplemental claims. And at that time, the attorneys from the capital litigation division indicated that claims were supported by the record and they were not in need of further amendment. Eventually, the capital litigation division attorneys filed a motion to withdraw, citing irreconcilable difference of opinion and noted that the defendant had repeatedly sought the assistance of the trial judge and the ARDC in overriding counsel's professional judgment. And in September of 2003, the capital litigation attorneys were allowed to withdraw. Mr. Flood was appointed at that time. On page 10 through 12 of the people's brief, we have a detail providing the new amendments and additions Mr. Flood made in August of 2004 to the defendant's already twice-amended petition. And after Mr. Flood's amendment... And that August amendment in 2004 was after Mr. Moore reported Mr. Flood to the ARDC. Correct? I don't recall the specific timeline on his filing to the ARDC. I do know that in his response, Mr. Flood indicated that the defendant wanted items placed in the petition that were not properly brought in the petition because of an arrest judicata or waived and that he was being pressured continuously by counsel or by the defendant to incorporate those claims. People note that in order for Mr. Flood to have made the amendments that he did, he had to have read the record to make the changes to the procedural facts and such. And the defendant acknowledged in one of his motions to discharge Mr. Flood that Flood had communicated with him by telephone, by letter, and had personally met with him to discuss his claims. Now after a series of pro se filings by a defendant in June of 2006, Mr. Flood filed a third amended successive petition, which now contained 27 claims. And the defendant filed a pro se 28th claim alleging ineffective assistance, which the trial judge allowed to be incorporated into this particular petition. The people note that the defendant filed numerous motions to discharge every counsel that was assigned to assist him in preparing the successive petition and also filed the ARDC complaint against both the capital litigation attorneys and Mr. Flood. And the record shows that Mr. Flood incorporated into the petition claims that he knew were not valid and were not properly raised in this petition because they had been adjudicated already or they were subject to waiver and such. But he did so under pressure from the defendant. And the defendant now claims that Mr. Flood was ineffective because he did exactly what the defendant demanded to have done for all these years. We've detailed the efforts of Mr. Flood in our brief. The counsel says that the attorney should have risen above that, should have been the lawyer instead of just the pummeled result of a client's constant nagging. I believe he was. I mean, there's something to that, no? Well, certainly there's something to the assertion that the attorney is the captain of the ship, but at the same time you are responsible to represent your client in the way they want to be represented. And in this case, Mr. Flood clearly was advising the defendant that these claims were not properly brought. But he would not listen. He was insistent that all his claims were going to be brought regardless of their merits. And it did not prejudice the defendant to have these claims brought into his petition, even though they were not properly brought in all cases because they had been rescued, or because they could have been brought on direct appeal or in an earlier post-conviction petition. This did not harm the defendant's case to have them brought. It actually gave the attorney, Mr. Flood, an opportunity to present an alternative theory on some of these claims. So, in essence, he actually could have furthered defendants' claims by continuing to incorporate them in the petition. If you have no more questions on this particular issue, stand on argument in the brief on this for any other argument. Thank you. As far as the second issue that was raised regarding whether the attorney has erred in dismissing claims based on recanted testimony of Erwin Johnson and Troy Snell, initially, we have to observe that in his affidavit, Mr. Snell did not recant his testimony. And that our Supreme Court, in reviewing the dismissal of defendants' original post-conviction petition, found that Snell's affidavit merely confirms his earlier testimony that the defendant did not incriminate himself. The court also found the issue was waived. In his successive post-conviction petitions, the defendant alleged that the people failed to disclose that Johnson and Snell did not divulge that they had been drawn as reward money in exchange for testimony, and that they gave perjury testimony. The trial record demonstrates that the defendant's trial counsel, Mr. Royce, was well aware that Johnson and Snell knew about the reward money, and shows that Royce cross-examined Johnson regarding his testimony that he had learned of the reward money from Snell. In closing argument, Royce argued that Johnson and Snell were drug dealers, they were robbers, and he again raised the issue of their knowledge of the reward money. Regarding defendant's assertion in a brief that the prosecution knew that Johnson and Snell gave perjury testimony, the people noted in Johnson's affidavit, Johnson clearly states that he lied to the state's attorney. In his affidavit, Snell did not comment on whether he lied to the police or the state's attorney. Thus, the record contradicts or fails to substantiate any claim that people knew that Johnson and Snell allegedly perjured themselves. And trial counsel Royce fully cross-examined Johnson and Snell at trial, and argued to the jury that they're not credible, and therefore the record positively disapproves the claim of knowing he's perjured testimony, so there's no due process violation here. If you have no questions of me regarding this issue, people can stand on the brief for the second issue also, or any further argument. Thank you. I'd like to just address a couple of the points that counsel made. First, I think talking about Davis and Pendleton is a little bit misleading, because those are cases where, on appeal, the defendant was alleging counsel should have found these other claims, should have investigated and discovered that there were other claims, and that counsel may do that, but counsel's not obligated to do that, to discover additional off-record claims. We're not talking about adding claims here. What we're talking about is the obligation to go out and investigate the claims that are presented, and talk to the known witnesses, the people who are identified in the petition, as the individuals who would support the claims. You're talking about fleshing out what's been raised by that. Right, not going out to look for new claims, but doing what, under Johnson, the Supreme Court has said in the languages, at a minimum, counsel had an obligation to attempt to obtain evidentiary support for claims raised in the post-conviction petition. And that's what we're talking about here. Not to go out and get new claims, but to get the evidence, or attempt to get the evidence to support these claims. And again, if counsel can't get it, if that evidence isn't out there, then take the claims out. That's also part of your obligation as counsel, to not present unsupported, frivolous, meritless claims to the court. In terms of the timing of the ARDC complaint, it was June 30, 2004, that that was filed, and it's in the record file stamp that date. It may have been filed a few days earlier, but that's the date it's file stamped in the record. The amended PC by Mr. Flood was filed in August. So after that, in terms of the timing. Addressing your point, counsel is not just a mouthpiece for the defendant. You're not responsible to represent your client in the way they want to be represented. That would be great for your clients. I mean, they would love it. They wouldn't get anywhere. That's why you get counsel. That's why you want to have counsel. Because we're familiar with the law, we can amend the claims, make them legally sufficient, get an investigator out there. PD offices have investigators. Get someone out there to talk to the witnesses and get what you need. In terms of the argument that there's no prejudice shown, under Suarez, if the counsel provided an unreasonable level of assistance, you don't have to show prejudice. The state concedes as much at page four in their brief. And that's the thing. If counsel's unreasonable, it's got to go back. There's not a requirement of prejudice. But I think, too, you could find actual prejudice here, which gets us really to that second issue about the New York witnesses and their recantations. Talking about Snell and his affidavit, whether it's really a recantation or not, it's certainly stronger than anything he said at trial. His trial testimony was, well, the defendant, Mr. Moore, said, they're trying to charge me with this stuff in Illinois, but they don't have anything. But now he's saying, he didn't say that. Plus, I knew about the $40,000 then when I came forward. At trial, the reward money was brought up. And Johnson and Snell both said, yeah, we've heard about it.  about the reward. Now the affidavits are saying, no, we learned about it the same day that they stuck Mr. Moore in the cell with us and told us. Hey, if he says anything, you might stand to make some money. There's also an issue about whether the state knew that the testimony was false at the time. Those affidavits also say, well, we got the information from listening to the detectives. This is how we formulated what we were going to say. We got our information from a detective, a state actor. So it's a substantial showing is what we're looking at here. I mean, this is second stage review in terms of that claim. We're not asking this court to reverse and send it back for a new trial at this point, but to send it back for a third stage evidentiary hearing where those matters can be fleshed out, credibility and determinations can be made, and the claim can be thoroughly evaluated. I have a question. Yeah. I'm struggling with what reasonable assistance is in a case such as this with a client who is very involved in his case. You seem to suggest that reasonable assistance means organizing the client's claims such that the court can digest or the state's attorney can digest and process those claims. Is that reasonable assistance or is reasonable assistance presenting the claims the client wants presented? I think it's part of it. I think organizing it so that the court, the state's attorney, the parties can digest it and thoroughly evaluate it, I think that's part of it. Presenting whatever the client wants presented is not necessarily reasonable. If it can be supported... But reasonable assistance has to be directed towards the client, not the court. No, but part of your obligation, I mean, we all have an obligation to not present frivolous filings to the court. There are means for withdrawing claims. There are means for withdrawing from representation if you think all the claims have no merit. We do it in the appellate court, in collateral proceedings, under Finley, in the trial court. You can do it under Greer. If there's nothing to it, you can get out. If there's something to it, though, and that's what it boils down to. Counsel almost got out, but the court said you can't. You can't. And so if he had pared the claims down, what do you think his client would have done? You're not doing your job for me the way I want you to do it. Here he was in a catch-22 situation. Except you're not. I mean, we all have clients that want to control the litigation, that want to control how we do things. You have an obligation to provide reasonable assistance. Here, that would have amounted to, yes, withdrawing some claims, consolidating some claims, having a hard conversation with the client about the need to do that. But also investigating the witnesses that are identified. Getting affidavits. Some of them as simple as converting a letter from an expert into a sworn affidavit. That's not hard. That's reasonable to expect counsel to do. In the six-plus years that counsel represented Edmore on this particular petition in the trial court, it's reasonable to expect that he go out and talk to the witnesses that are identified by name, that they're saying this is what the witness would say. I mean, some of that information even comes through the affidavits from the prior attorney, saying they've told me this. Okay, now you go out and talk to them and get their actual affidavit. So reasonable assistance, in your mind, means a duty to make it easier for the court? No, I'm not saying it's a duty to make it easier for the court. But I am saying by doing those things, by presenting a comprehensive and coherent filing to the court, you're doing what's in the best interest of your client as well. Because it's not in the client's interest to not have a filing that is legally sufficient and factually supported. And that's what we have here. All right. I understand your position. Thank you. Thank you. Well, we will take the matter under advisement, discuss it between ourselves,